1  BOERSCH SHAPIRO LLP
   Martha Boersch (State Bar No. 126569)
2  Mboersch@boerschshapiro.com
   Lara Kollios (State Bar No. 235395)
3  Lkollios@boerschshapiro.com
   1611 Telegraph Ave., Ste. 806
4  Oakland, CA 94612
5  Telephone: (415) 500-6640

6  Attorneys for Defendant
7  Kenneth Taylor

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES, | Case No. 17-cr-0191-JST |
|---|---|
| Plaintiff, | **MOTION TO SUPPRESS EVIDENCE SEIZED FROM 6877 ELVERTON DRIVE, OAKLAND, CALIFORNIA AND REQUEST FOR EVIDENTIARY HEARING** |
| v. | |
| KENNETH TAYLOR, et al., | |
| Defendants. | |
| | Date: October 12, 2018 |
| | Time: 1:30 p.m. |

TO THE COURT AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 12, 2018, at 1:30 p.m. or as soon thereafter as the matter may be heard in the above-entitled Court, in the Courtroom of the Honorable Jon Tigar, United States District Court in and for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California, defendant Kenneth Taylor will move this Court for an Order suppressing the evidence seized from 6877 Elverton Drive, Oakland, California, on the grounds that 1) the search warrant was overbroad and lacked sufficient particularity; 2) the affidavit lacked probable cause to search the 16 electronic devices seized; and 3) the warrant was based on stale information.  If this Court determines that the warrant is facially valid, Taylor further requests an evidentiary hearing to determine whether the government exceeded the scope of the warrant in its execution by failing to follow the search protocol for electronically stored information (ESI).

This motion is based on this Notice of Motion and Motion, on the attached Memorandum of Points and Authorities, the Declaration of Martha Boersch, the pleadings and papers filed in this matter, and on other such arguments or evidence as the Court shall deem proper.[1]

**BACKGROUND**

On February 17, 2016, the government obtained a search warrant for Taylor's home at 6877 Elverton Drive in Oakland, California. The face page of the search warrant authorizes the search of the residence described in Attachment A and the seizure of the items described in Attachment B. *See* Declaration of Martha Boersch in Support of Motion to Suppress ("Boersch Decl."), Exhibit A at US-013339. Attachment B authorizes the government to seize fifteen broad categories of documents and nine categories of computer and electronic devices and related materials "used to facilitate violations of" eight federal statutes, including tax evasion, false tax returns, wire fraud, foreign bank and financial reporting requirements, money laundering and conspiracy statutes. *Id*. The search warrant itself contains no further specific description of alleged offenses. Attachment B further allows the government to seize "all items and records which constitute evidence, fruits, or instrumentalities of violations" of the named statutes related to a list of 23 individuals and entities and "[a]ny other entities and individuals engaging in financial transactions with the individuals and entities listed above." *Id.* None of the specific categories contain any date restriction, any definition of terms, any description of the alleged underlying criminal activity, or any reference to any federal criminal law; instead, Attachment B purports to authorizes the seizure of any of the listed items "[f]or the period January 1, 2006 through the present," a period of ten years. *Id*.

The search warrant also contained, in Attachment C, a protocol for searching for ESI. *See* Boersch Decl., Exhibit A at US-013344-45. That protocol required the government to determine whether the electronic devices could be searched on-site, and if not, to make a mirror image of the device and complete a forensic review of the mirror image within 120 days. *Id*. If the government determined that a mirror image could not be made on-site within a reasonable time, the protocol allowed the government to seize the device, but required the government to "file a return with a

---

[1] Taylor reserves the right to supplement this and any other motion and to file additional motions. The government has produced over 60 gigabytes of discovery in this matter and counsel has not been able to review all the thousands of pages produced thus far. *See* Boersch Decl. at ¶ 3.

magistrate judge that identifies with particularity the removed device" within 14 days of the execution of the warrant. The protocol also required the government, "within a reasonable amount of time, but not to exceed 60 calendar days after completing the forensic review of the device or image," to destroy or return to defendant any data outside the scope of the warrant. *Id*. The protocol required the government to "minimize" exposure to materials outside the scope of the warrant. *Id*. The protocol did not require the government to forswear reliance on the plain view doctrine, and it did not require the government to have someone other than the case agents, *e.g*., a "filter team," review the data that was outside the scope of the warrant.

The affidavit submitted to the court in support of the search warrant does not appear to have been incorporated into nor attached to the search warrant. Boersch Decl., Exhibit A at US-013337. The affidavit purported to set forth probable cause to believe that Taylor was "a leader in a set of financial fraud schemes, sometimes collectively known as 'Advance Fee,' 'Prime Bank' or 'High Yield' investment schemes." Other than boilerplate, the affidavit detailed four discrete alleged frauds"  1) one involving Taylor's codefendant Sharon Ringgenberg and a company called Success Bullion, a company owned by a Taiwanese citizen named Chris Jann; 2) one involving a person named Kenya Gatabaki who claimed that he was defrauded in 2006 by Clearfog Investments LLC; 3) one involving a person named Aunita Jones in 2009 who made a similar claim about Clearfog; 4) and one involving a person named Michael Kooyman, who claimed he was defrauded in 2012 by a company called ARI Capital and an individual named Nicolette Cain. The balance of the affidavit described various financial transactions allegedly conducted by Taylor and/or entities associated with Taylor between 2010 and 2012.

The application and affidavit incorporated an earlier search warrant for the entire email accounts of four other individuals. That affidavit contains no reference to Taylor but describes several other discrete transactions by Taylor's codefendants.

The affidavit for the search of Mr. Taylor's home did not specify any particular computer or electronic device used by Taylor, but allowed the seizure of any of the 9 categories of computer and electronic devices. When agents executed the search, they seized 16 electronic devices – virtually every electronic device in the home as well as an Apple iPhone taken from Mrs. Taylor's person.

After the search, the government apparently searched every device, and produced to Taylor (and the other defendants) over 35,000 pages of images taken from those devices, including numerous personal emails, text messages, and documents (including religious materials), belonging to Taylor and his family members. Boersch Decl. ¶ 12.

## SUMMARY OF ARGUMENT

The search warrant for 6877 Elverton Drive is overbroad and lacks the required particularity and specificity. The face of the search warrant itself failed to describe the criminal violations at issue. The warrant authorized the search and seizure of virtually every electronic device in Taylor's house, regardless of whether that device had any connection to the specific alleged offenses or even any connection to Taylor. It listed broad categories of documents without any particularity or limitations on which documents within each category could be seized. For instance, it allowed agents to seize "all financial records" related to the named individuals and entities regardless of whether those financial records had any relationship to the alleged offenses or the particular frauds alleged in the affidavit; it allowed agents to seize "all records" related to a list of individuals and companies, regardless of whether those records had any relationship to the alleged offenses; and it allowed agents to seize "all accounting records" related to Taylor and the other named individuals and entities regardless of whether they related to the alleged offenses. *Id*. Such a warrant is facially overbroad.

The search protocol attached to the warrant further rendered the warrant overbroad. That protocol did not require the government to foreswear reliance on the plain view doctrine and contained no provision for the seized data to first be reviewed by a filter team to segregate relevant data from personal, private and irrelevant data. The protocol also improperly allowed the government to search and seize any digital device without probable cause to believe that any specific devices were even potentially used in furtherance of any crime.

Finally, the search warrant lacked probable cause because it was based on stale information more than four years old.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **THE SEARCH WARRANT IS FATALLY OVERBROAD**

The search warrant is overbroad and lacks sufficient particularity. A search must be specific

as to the place searched and persons and things seized. *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 7747 749 (9th Cir. 1989). The purpose of the constitutional requirement of specificity for search warrants is to prevent law enforcement from engaging in general, exploratory searches with no limits on their discretion. *United States v. Cardwell,* 680 F.2d 75, 77 (9th Cir. 1982). "Specificity has two aspects: particularity and breadth. . . . Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir.2006)). The warrant should list the items to be seized with such specificity that "nothing is left to the discretion of the officer executing the warrant." *United States v. Bridges*, 344 F.3d 1010, 1016 (9th Cir. 2003) (quoting *Cardwell*, 680 F.2d at 77).

The search warrant here lacks the requisite particularity and is overbroad. The warrant allowed the government to search and seize every document and every electronic device in Taylor's house regardless of whether they had any connection to the specific alleged offenses and regardless of whether they belonged to Taylor or some other family member. The warrant did not describe the items to be searched for and seized with any particularity, instead simply authorizing the search and seizure of broad categories of material that was evidence of the numerous crimes simply listed at the beginning of Attachment B. Such a broad "limitation" on items to be seized is insufficient under the Fourth Amendment. *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982) ("'limiting' search to only records that are evidence of a violation of a certain statute is generally not enough); *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) (same).

The face of the warrant was not limited *at all* by reference to any federal statute, and the affidavit did not explain how any specific broad category of documents was or could be evidence of any specific statute. The warrant allowed agents to seize broad categories of documents "related to" a list of individuals and companies without any particularity or description of how the documents to be seized related to any specific criminal activity, and without any limitations on which documents within each category could be seized. Such a search warrant is fatally overbroad. *See United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) ("By failing to describe with any particularity the items to be seized, the warrant is indistinguishable from the general warrants repeatedly held by this court to be

unconstitutional").

In *Kow*, the Ninth Circuit suppressed evidence seized pursuant to a warrant that, like this warrant, broadly authorized the seizure of generic categories of records as well as any records "relating to any fake or fraudulent transactions" between or among four individuals or relating to any business dealings with another company. 58 F.3d at 426. The warrant in *Kow* did not describe the specific criminal activity that was under investigation or attempt to limit the records to be seized to those that related to that specific criminal activity. *Id*. at 427, 428 ("Here, none of the fourteen categories of seizable documents was limited by reference to any alleged criminal activity). The warrant in *Kow* did not limit the scope of the seizure to a time frame in which the suspected criminal activity took place. The Court held that such a warrant was "not sufficiently particular." *Id*.

The warrant here was similarly overbroad. While Attachment B listed a laundry list of federal statutes in the introductory paragraph, none of the broad categories of documents were limited to any specific federal statutory violation, leaving agents to seize anything and everything rather than try to guess what document might be relevant to or evidence of any particular violation of federal law. And while Attachment B purported to define a time period, that time period – ten years – was overly broad and bore little relationship to the facts set forth in the affidavit.

Nor can the government rely upon the affidavit submitted in support of the search warrant to provide the requisite specificity. That affidavit was neither attached to nor incorporated into the search warrant, and therefore cannot save the defective warrant. *See Spilotro, supra*, 800 F.2d at 967; *United States v. Hillyard*, 677 F.2d 1336, 1340 (9th Cir. 1982).

The search warrant here is fatally overbroad, and the evidence seized from Taylor's house must therefore be suppressed.

## II. THE SEARCH WARRANT PROTOCOL RENDERED THE WARRANT OVERBROAD AND FAILED TO FOLLOW NINTH CIRCUIT LAW

The search warrant protocol included in the search warrant as Attachment C further rendered the warrant overbroad. Since the Ninth Circuit decided *United States v. Comprehensive Drug Testing*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) ("*CDT*"), a decision out of this district, the government has been on notice that it should adopt search protocols for ESI that prevent "general

rummaging" through an individual's private, personal electronic information. *See generally, In re United States of America's Application for a Search Warrant to Seize and Search Electronic Devices from Edward Cunnius*, 770 F.Supp.2d 1138 (W.D. Wa. 2011) (hereinafter *In re USA Application*); *cf. United States v. Schesso,* 730 F.3d 1040, 1047 (9th Cir. 2013) (warrant valid despite lack of guidelines laid out in *CDT III* because of temporal sequence of case *vis a vis* the decision in *CDT III* and the facts did not implicate the concerns animating the Court in *CDT III)*. The protocol here is deficient because it does not require the government to foreswear reliance on plain view and it makes no provision for a filter team.[2] Furthermore, even though the protocol does require the government to destroy or return the data outside the scope of the warrant, the government did not do so here.

        The District Court in *In re USA Application* refused to authorize a search warrant for any electronic device found in a residence where the government refused to foreswear reliance on the plain view doctrine when executing the search and refused to establish a filter team to review the data seized on those devices. 770 F.Supp.3d at 1139. Without those prophylactic measures, the warrant was overbroad. *Id*. at 1141. Indeed, the warrant was "in essence, boundless," insofar as it allowed the agents to seize any "passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data." *Id*. at 1145.

        The warrant here similarly did not contain the required prophylactic measures and allowed the government "boundless" discretion to search and seize ESI storage devices. *See* Exhibit A and Attachment B (allowing seizure of "any physical keys, encryption devices, dongles and similar items that are necessary to gain access to the digital device" as well as "any passwords, password files, test keys, encryption codes or other information"). As Judge Kleinfeld has noted in dissent:

> [F]or most people, their computers are their most private spaces. . . .
>
> There are just too many secrets on people's computers, most legal, some embarrassing, and some potentially tragic in their implications, for loose liberality in allowing search warrants. . . .
>
> Nor are secrets the only problem. Warrants ordinarily direct seizure, not just search, and computers are often shared by family members. Seizure of

---

    [2] During the execution of the search, the agents seized a number of attorney-client communications. Boersch Decl. ¶ 10. It is unclear whether any taint team was assigned to review those items.

> a shared family computer may, though unrelated to law enforcement purpose, effectively confiscate a professor's book, a student's almost completed Ph. D thesis, or a business accounts payable and receivable.

*United States v. Gourde,* 440 F.3d 1065, 1077 (9th Cir. 2006); *see also In re Search of Google Email Accounts*, 92 F.Supp.3d 944, 952 (D. Alaska 2015) (warrant to allow search and seizure of entire gmail account was overbroad because it was not tailored to the probable cause showing).

Nor did the warrant affidavit contain any facts relating to any specific computer or electronic device, rendering the warrant insufficiently particular. The lack of specificity in the warrant allowed the agents to conduct an "indiscriminate rummaging" through every electronic device in Taylor's home. *Spilotro,* 800 F.2d at 963. The government seized over 35,000 images from those devices, including numerous personal, private emails of Taylor and his family, as well as business information relating to Taylor's wife and family. None of that information was within the scope of the warrant and none of that information appears to have been destroyed, as required by the government's own protocol.[3]

The search protocol rendered the warrant overbroad, and in any event even its minimal requirements apparently were not followed; therefore any evidence seized must be suppressed.

### III. THE SEARCH WARRANT LACKED PROBABLE CAUSE TO SEARCH THE 16 SEIZED ELECTRONIC DEVICES

The search warrant affidavit lacked probable cause for the government to search every electronic device that it seized from Mr. Taylor's home, and any evidence obtained from those devices must be suppressed. The affidavit does not recite any facts indicating that any particular electronic device or medium was used in connection with the fraud (other that any SWIFT machine). Because the search warrant lacked probable cause for the search of the fifteen other categories of electronic devices seized and instead allowed the seizure and search of any electronic device, the warrant was precisely the type of general warrant the Fourth Amendment was enacted to prohibit.

---

[3] If the Court determines that the protocol is valid despite the Ninth Circuit's admonition in *CDT III,* Taylor reserves his right to challenge the execution of the warrant, to obtain discovery, and to an evidentiary hearing to determine whether the search protocol was properly followed.

## IV. THE INFORMATION IN THE SEARCH WARRANT AFFIDAVIT WAS STALE

The information recited in the search warrant affidavit related to events that occurred as early as 2008 and no later than 2012, more than four years before the search was executed. A warrant cannot issue without probable cause. "To meet this test, the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued." *United States v. Greany*, 929 F.2d 523, 524–25 (9th Cir. 1991) (citing *United States v. Hendricks,* 743 F.2d 653, 654 (9th Cir.1984) (quoting *Durham v. United States,* 403 F.2d 190, 193 (9th Cir.1968)), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985)). In part because of the overbreadth and lack of particularity of the warrant, there are no facts in the search warrant affidavit that support a conclusion that all of the evidence to be seized would be on the premises four years after the events described. *Cf. United States v. Schesso,* 730 F.3d 1040, 1047 (9th Cir. 2013) (information underlying the warrant was not stale where warrant contained facts demonstrating that evidence likely remained on the premises).

## V. THE GOOD FAITH EXCEPTION OF LEON IS INAPPLICABLE

Because the search warrant here is facially deficient, as was the warrant in *Kow*, the good faith exception of *United States v. Leon*, 468 U.S. 897, 926 (1984) does not apply. *Kow*, 58 F.3d at 428 ("when a warrant is facially overbroad, absent *specific assurances* from an impartial judge or magistrate that the defective warrant is valid despite its overbreadth, a reasonable reliance argument fails"). Furthermore, here, as in *Kow,* the affidavit was not attached to nor incorporated by reference into the search warrant, nor is there any evidence that the executing officers read or relied on the warrant. In fact, the evidence suggests otherwise, since the government seized and searched every electronic device and seized a large amount of wholly irrelevant documents.

//
//
//
//
//
//

# CONCLUSION

For the foregoing reasons and based on the record herein, the evidence seized from 6877 Elverton Drive must be suppressed.

Dated:  August 10, 2018					BOERSCH SHAPIRO LLP

							*/s/ Martha Boersch*
							Martha Boersch

							Attorney for Defendant Kenneth Taylor