UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>KENNETH TAYLOR,<br>Defendant. | Case No. 17-cr-00191-JST-1<br><br>**ORDER DENYING MOTION FOR A BILL OF PARTICULARS**<br>Re: ECF No. 57 |

Before the Court is Defendant Kenneth Taylor's motion for a bill of particulars. ECF No. 57. The Court will deny the motion.

## I. BACKGROUND

On April 13, 2017, a grand jury returned an indictment charging Taylor with one count of conspiracy to commit wire fraud, two counts of wire fraud, and two counts of subscribing to a false tax return. ECF No. 1 ¶¶ 12-37. The indictment alleges that Taylor and his co-defendants, Sharon Ringgenberg and Kenneth Scott, through entities including Success Bullion USA LLC, Clearfog Investments LLC, Raigold LLC, and Centerlink LLC, were involved in a scheme to market and sell fictitious financial instruments, including "Proof of Funds Statements" and "Standby Letters of Credit" ("SLOCs"). *Id.* ¶¶ 2-27. The indictment alleges that, "[a]t all relevant times, TAYLOR exercised control over Clearfog, Raigold, Success Bullion USA, and Centerlink." *Id.* ¶ 7. As part of the scheme, Taylor, Ringgenberg, and Scott are alleged to have misrepresented Success Bullion USA's connections and access to capital, and to have misrepresented that investors could use the Proof of Fund Statements and SLOCs "to obtain high-value loans," "enhance their credit," and "access high-yield private trading platforms." *Id.* ¶¶ 15-24. The indictment details four specific transactions representative of the purported scheme. *Id.* ¶ 28.

The government has "produced several copies of the search warrant and application and affidavit for the search of Mr. Taylor's home." ECF No. 56-1 ¶ 7 (declaration of defense counsel in support of motion to suppress). In addition, "[b]etween May 2017 and September 2017, the government produced over 60 gigabytes of information consisting of over 200,000 pages of discovery in this matter." *Id.* ¶ 3. Defense counsel contends that this discovery includes "documents apparently relating to dozens of individuals and dozens of entities that have no apparent relation to the charges in this case," including over 12,000 pages relating to a civil case, *Doublevision Entertainment LLC v. Navigators Specialty Insurance Company*, No. 3:14-cv-02848-WHA (N.D. Cal.), and over 1,300 pages relating to Commercial Escrow Services, Inc., American Resource Group LLC, or American Master Clean – company names that do not appear in the indictment.[1] *Id.* ¶¶ 4-5.

On August 10, 2018, Taylor filed a motion for a bill of particulars, requesting that the government provide more specific information regarding Count 1, conspiracy to commit wire fraud. Specifically, he asks that the government be required to provide the following information:

> • What specific "fictitious financial instruments" did Mr. Taylor sell, to whom, when, and what was "fictitious" about the instruments. (Ind. ¶ 14);
>
> • What specific "misrepresentations were made by Mr. Taylor about assets managed by Success Bullion, to whom, when, and what was misrepresented (Ind. ¶ 15);
>
> • What specific Proof of Funds Statements and/or SLOCs did Mr. Taylor market, sell or promote, to whom, when, and what was fraudulent about the Proof of Funds Statements or SLOCs (Inc. [sic] ¶ 16 and ¶ 22);
>
> • What specific "fraudulent promotion" did Mr. Taylor make, to whom, and when, and what was fraudulent about the promotion, who made the alleged fraudulent statements (Ind. ¶ 17 ¶ 23);
>
> • When, to whom and where did Mr. Taylor state that (i) "investors could use Proof of Funds Statements to enhance their credit" or to obtain high value loans (Inc. [sic] ¶¶ 18, 19), and (ii) investors could use Proof of Funds Statements and SLOC's to gain access to high

---

[1] Doublevision was "suing on assignment from Commercial Escrow Services, Inc. ('CES') and Antoinette Hardstone (collectively, the 'CES Parties')." *Doublevision Entm't*, Case No. 3:14-cv-02848-WHA, ECF No. 20 at 2.

2

yield trading platforms (Ind. ¶¶ 20, 24), and what were the misrepresentations;

• When, where, and to whom did Mr. Taylor "misrepresent" that Success Bullion USA and Centerlink could transmit financial instruments using SWIFT (Inc. [sic] ¶ 25), and what was false or misrepresented about that statement;

• What specific false representations did Mr. Taylor make to individuals identified as S.B[.], K.B., W.L., and H.H. ([Ind.] ¶¶ 28(a)-(c)), and who were the "others" who made such representations and what was false about the representations.

ECF No. 57 at 6-7.

## II. LEGAL STANDARD

Rule 7(f) of the Federal Rules of Criminal Procedure provides that "[t]he court may direct the government to file a bill of particulars," and that "[t]he defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." A bill of particulars serves three purposes:

> [1] to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, [2] to avoid or minimize the danger of surprise at the time of trial, and [3] to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes.

*United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (quoting *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir.1976)). "A defendant is not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (emphases in original). Likewise, "[a] bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation." *United States v. Hsuan Bin Chen*, No. CR 09-110 SI, 2011 WL 332713, at *7 (N.D. Cal. Jan. 29, 2011) (quoting *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (internal citations omitted) (emphasis in original)).

When determining whether to direct the government to file a bill of particulars, the "court should consider whether the defendant has been advised adequately of the charges through the

indictment and all other disclosures made by the government." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). "To the extent that the indictment or information itself provides details of the alleged offense, a bill of particulars is, of course, unnecessary." *Giese*, 597 F.2d at 1180 (quoting 8 Moore's Federal Practice P 7.06(1) at 7-31 n.1 (2d ed. 1978)). But even where the indictment does not provide such details, "[f]ull discovery will obviate the need for a bill of particulars." *Long*, 706 F.2d at 1054. "The decision whether to grant a request for a bill of particulars is directed to the trial court's discretion." *Id.*

### III. DISCUSSION

As an initial matter, the government argues that Taylor's motion is untimely. The Court disagrees. Rule 7(f) requires that a motion for a bill of particulars be filed "within 14 days after arraignment *or at a later time if the court permits*." Fed. R. Crim. P. 7(f) (emphasis added). Although Taylor could have filed his motion sooner, particularly since he relies on discovery that was produced months ago, his motion was filed within the filing period set by the Court pursuant to the parties' stipulation. *See* ECF No. 49 at 2 (setting August 10, 2018 motions deadline). The Court will consider the motion on its merits.

Taylor argues that a bill of particulars is necessary to provide him with information "regarding the content of the alleged misrepresentations or 'fraudulent' sales, including the content of the misrepresentation, who made them, when, or to whom." ECF No. 57 at 2. However, "there is no requirement in conspiracy cases that the government disclose even all the overt acts in furtherance of the conspiracy. . . . [A] request for the 'when, where, and how' of every act in furtherance of the conspiracy [is] equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars." *Giese*, 597 F.2d at 1180-81; *see also United States v. Cadena*, No. CR.S-07-0248 WBS, 2008 WL 2557948, at *2 (E.D. Cal. June 24, 2008) (finding that "particulars with respect to the time, date, places and acts through which defendant Cadena joined the conspiracy and completed his participation therein, the acts performed and the witnesses present" are "more akin to evidentiary details not properly the subject of a bill of particulars"). Additionally, a request "to obtain the names of any unknown conspirators . . . do[es] not warrant a bill of particulars." *United States v. DiCesare*, 765 F.2d 890,

4

897-98 (9th Cir. 1985), *amended*, 777 F.2d 543 (9th Cir. 1985).

Based on the Court's review of the indictment and search warrant affidavits produced in this case, a bill of particulars is not warranted. Count 1 of the indictment charges Taylor with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. The count identifies the charge (conspiracy to commit wire fraud); the statute under which the charges are brought (18 U.S.C. § 1349); the time of the alleged conspiracy (beginning in or about November 2008 and continuing through June 2012); the elements of conspiracy; and the "Manner and Means of Conspiracy" containing allegations of Taylor's role, including specific actions and fraudulent transactions. ECF No. 1 ¶¶ 12-29. More specifically, the indictment specifies that the "fictitious financial instruments" alleged in paragraph 14 are the "Proof of Funds Statements" and SLOCs marketed and sold by Defendants. *Id.* ¶¶ 16-24. Defendants allegedly misrepresented that investors could purchase these instruments to "lease Success Bullion USA's assets"; "obtain high-value loans"; "enhance their credit"; and "access high-yield private trading platforms." *Id.* Defendants are further alleged to have "misrepresented the assets Success Bullion USA managed and misrepresented Success Bullion USA's access to capital." *Id.* ¶ 15. In addition, the indictment alleges that Taylor and Ringgenberg "created Success Bullion USA 'account statements' which falsely reflected that Success Bullion USA managed up to $500 million on behalf of its clients"; "misrepresented that Success Bullion USA and Centerlink were capable of transmitting Success Bullion USA's financial instruments – including Proof of Funds Statements and SLOCs – over the SWIFT [Society for Worldwide Interbank Telecommunication] platform"; and "established a website for Success Bullion USA which was intended to create the false pretense that Success Bullion USA was a subsidiary of a publically-traded financial institution in Hong Kong, China." *Id.* ¶¶ 21, 25, 26. Taylor is alleged to have "exercised control over Clearfog, Raigold, Success Bullion USA, and Centerlink" "[a]t all relevant times." *Id.* ¶ 7.

Moreover, the indictment details four examples of allegedly fraudulent transactions. As two examples:

> In 2009, Success Bullion USA – through TAYLOR and RINGGENBERG – sold a Proof of Funds Statement to victims K.B. and S.B. for a price of approximately $200,000. K.B. and S.B. were

5

> falsely told that by purchasing the Success Bullion USA Proof of Funds Statement, K.B. and S.B. could obtain a $100 million line of credit and participate in a high-yield private trading program. As part of the transaction, RINGGENBERG produced a Success Bullion USA false account statement which reflected that Success Bullion USA was managing approximately $101 million in assets on behalf of K.B. Based on the conduct and false representations of TAYLOR, RINGGENBERG, and others, approximately $115,000 provided by K.B. and S.B. was wired to Success Bullion USA.
>
> From in or about March 2012 to in or about June 2012, at the direction of TAYLOR and RINGGENBERG, a Success Bullion USA broker marketed and brokered the sale of a Success Bullion USA SLOC to P.O., J.P., and others for the price of approximately $175,000. This broker misrepresented that the market value of the SLOC was $10 million, and that P.O. and J.P. could use the SLOC to access a private trading platform. RINGGENBERG then produced a fictitious $10 million "Standby Letter of Credit." TAYLOR further misrepresented that he transmitted the SLOC to a financial institution in Europe through SWIFT's communication platform.

*Id.* ¶¶ 28a, 28d; *see also id.* ¶¶ 28b, 28c.

The search warrant affidavits provide even more information on the alleged misrepresentations. For example, they assert that Success Bullion USA's website falsely represented that it was a subsidiary of Success Universe Group Limited of Hong Kong. ECF No. 56-2 at 76-77. The affidavits also provide pages of detailed descriptions of the "Proof of Funds and Platform Trading Schemes" and "Standby Letter of Credit . . . and SWIFT Message Schemes," in addition to describing Taylor's alleged involvement in those schemes. *E.g.*, *id.* at 14, 33-56.

In short, the indictment and search warrant affidavits provide a description of the alleged conspiracy that adequately informs Taylor of the charges against him. A bill of particulars is not warranted.

The amount of discovery produced in this case does not require a different result. First, the search warrant affidavits describe involvement in the schemes by Commercial Escrow Services, thus rendering potentially relevant some of the discovery that Taylor's counsel contends is unrelated to this case. ECF No. 56-2 at 86, 90, 100-02. Second, and more importantly, the level of detail contained in the indictment and search warrant affidavits distinguishes this case from those on which Taylor relies. The indictment alleges that Taylor exercised control over the

entities involved in the conspiracy; he is named in every count in the indictment; and only one conspiracy is alleged. ECF No. 1 ¶¶ 7, 13, 31, 33, 35, 37. The indictment and search warrant affidavits also provide detailed explanations of the alleged schemes, including Taylor's involvement. *Id.* ¶¶ 12-29; ECF No. 56-2 at 14, 33-56. This case is therefore unlike *United States v. Chen*, where the indictment was unclear as to what extent the defendants and each co-conspirator was alleged to have participated in multiple alleged conspiracies. No. C05-375 SI, 2006 WL 3898177, at *3 (N.D. Cal. Nov. 9, 2006). And, unlike the court in *United States v. Feil*, this Court is persuaded that the indictment and search warrant affidavits are "sufficient to inform defendants of the charges and of the Government's theory of the case"; the level of detail in this case far exceeds the boilerplate paragraphs from the indictment cited by the *Feil* court. No. CR 09-00863 JSW, 2010 WL 1525263, at *2-3 (N.D. Cal. Apr. 15, 2010).

Additionally, the search warrant affidavits allege that Success Bullion USA was "actually a sham" that was not capable of producing valid financial instruments. ECF No. 56-2 at 36, 77. Thus, unlike in other cases, there is no confusion over which transactions the government contends were fraudulent; the government contends that all of them were. *Compare United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (insurance fraud case where government introduced evidence of twelve burglaries when only four were alleged to be false, and "[n]umerous documents regarding these twelve burglaries were admitted into evidence, although only three were alleged to be false"); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (Medicare fraud case where government "produced over 200,000 pieces of paper in hundreds of boxes and files, relating to 2,000 Medicare claims," but had "not yet informed the defendants which of these claims were false and in what way they were false"); *United States v. Fischbach & Moore, Inc.*, 576 F. Supp. 1384, 1388 (W.D. Pa. 1983) (Sherman Act case where "defendants claim that the conspiracy alleged by the government covers a seven-year period and over 150 projects, but that the counts of the indictment are so general that defendants are unable to ascertain which projects the government asserts were the subjects of the conspiracy, when the actions took place, or who was involved"). Although the government produced voluminous discovery in this case, a bill of particulars is not warranted because the indictment and search

warrant affidavits provide sufficient detail as to the theory of the government's case against Taylor.

## CONCLUSION

Taylor's motion for a bill of particulars is denied.

**IT IS SO ORDERED.**

Dated: October 12, 2018

							JON S. TIGAR
							United States District Judge