UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH TAYLOR,<br><br>Defendant. | Case No. 17-cr-00191-JST-1<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br><br>Re: ECF No. 56 |

Before the Court is Defendant Kenneth Taylor's motion to suppress. ECF No. 56. The Court held an evidentiary hearing on November 9, 2018, and the parties filed post-hearing briefs. The Court will now deny the motion.

## I. BACKGROUND

On February 17, 2016, the government obtained a search warrant for Taylor's residence at 6877 Elverton Drive in Oakland, California. ECF No. 56-2 at 2. It obtained a second warrant, nearly identical in substance, on February 24, 2016. ECF No. 56-3 at 2.

The parties did not submit copies of the application for the second warrant, but they both cite to the application for the first warrant as the relevant application. *See* ECF No. 56-2 at 12-106.[1] The Court does the same, as the minor differences in the affidavit are not relevant to the Court's analysis. *See* ECF No. 79-3 at 68 (testimony at evidentiary hearing that "the majority [of the second affidavit] was the same as the first, but there was some additional language . . . a paragraph or two added for the forfeiture of assets that may be found at the site").

---

[1] This attachment is missing two pages of the affidavit. Those pages may be found at ECF No. 79-5 at 42-43.

The warrant states that two attachments are "incorporated herein by reference."[2] ECF No. 56-3 at 2. Attachment A describes the premises to be searched. *Id.* at 3. Attachment B describes the items to be seized:

> For the period January 1, 2006 through the present, all items and records which constitute evidence, fruits, or instrumentalities of violations of Title 26 U.S.C. Section 7201, attempting to evade the assessment of a tax or payment thereof; Title 26 U.S.C. Section 7206(1), willfully making and subscribing to a materially false return; Title 31 U.S.C. Section 5314 and 5322(a), willful violation of foreign bank and financial account reporting requirements; Title 18 U.S.C. Sections 1343 and 1349, wire fraud and attempts/conspiracies to commit wire fraud; Title 18 U.S.C. Section 1956(a)(1), money laundering – financial transaction offense; and 18 U.S.C. § 371, entering into an agreement or conspiracy to defraud the government including the items listed below.

*Id.* at 4. Section I of Attachment B provides that the "items and records" to be seized "are those items relating to" a list of twenty-two individuals and entities, as well as "[e]ntities with variations" of the listed names and "[a]ny other entities and individuals engaging in financial transactions with the [listed] individuals and entities." *Id.* at 4-5. Section II identifies nineteen categories of tangible items to be seized.[3] *Id.* at 5-7. Section III identifies eight categories of computers and electronic evidence to be seized. *Id.* at 7-8.

The application for a search warrant was submitted by Internal Revenue Service Special Agent James Hade. ECF No. 56-2. It references an "ATTACHED AFFIDAVIT AND ATTACHMENTS" that include Attachments A and B described above, as well as Attachment C, a "PROTOCOL FOR SEARCHING DEVICES OR MEDIA THAT STORE DATA ELECTRONICALLY" ("ESI protocol"), and Attachment D, an affidavit from Federal Bureau of Investigations Special Agent Steven Coffin submitted in support of prior search warrants. *Id.* at 12-106. The warrant itself does not explicitly incorporate the affidavit or Attachments C or D, but

---

[2] Unless otherwise stated, all references to the warrant in this order refer to the second warrant, which was executed on February 25, 2016. ECF No. 56-3 at 9.

[3] Attachment B to the second warrant "limited [certain] records seized to be those related to Ken Taylor and his related business entities" and added several paragraphs to the list of items to be seized. ECF No. 79-3 at 92-93; *compare* ECF No. 56 2 at 5-7 (Attachment B to first warrant) *with* ECF No. 56-3 at 5-7 (Attachment B to second warrant).

it includes boilerplate language that the magistrate judge "find[s] that the affidavit(s), or any recorded testimony, establish probable cause" to search the Elverton residence. ECF No. 56-3 at 2.

Hade's affidavit describes his qualifications as a licensed certified public accountant and his experience and training as a Special Agent to support his "familiar[ity] with the methods and practices used by individuals and organizations engaged in money laundering and violations of the Internal Revenue Code." ECF No. 56-2 at 17-19. He states that, based on his experience and training, "individuals using e-mail, computers, and other electronic devices tend to retain digital data for longer periods of time, spanning multiple years and even indefinitely." *Id.* at 19. He further states that individuals engaged in financial fraud often maintain records of their crimes at their personal residences and on electronic devices, including personal computers, and that, "[i]n this case, witnesses and other evidence, such as e-mails, indicate that Taylor and his business associates used computers and/or other digital devices, to conduct business and fraudulent activities." *Id.* at 20-22. In addition, Hade states that "Taylor often and consistently used his home as his business address throughout the period of the fraud schemes," and that internet protocol ("IP") records revealed that two email addresses associated with the alleged fraud schemes were accessed several times from Taylor's residence during the time the fraud schemes were alleged to have occurred. *Id.* at 21, 52.

Both the Hade and Coffin affidavits present a detailed description of allegedly fraudulent schemes in which Taylor allegedly participated. *Id.* at 32-56, 75-105. Coffin's affidavit focuses mainly on Success Bullions USA ("SBUSA") and does not mention Taylor specifically, but Hade notes that although "Taylor did not openly purport to be an employee of SBUSA . . . , evidence obtained during the investigation indicates Taylor had an active role in creating, promoting, and operating SBUSA." *Id.* at 37. Hade's affidavit also identifies several other companies allegedly linked to Taylor and describes their role, and his, in the alleged fraud and tax evasion schemes. *Id.* at 32-56. Several of these companies listed 6877 Elverton Drive as their address on organizational documents and with financial institutions. *Id*. at 50, 52-55.

Attachment C to Hade's affidavit is a two-page protocol for searching electronically stored

3

information ("ESI"). *Id.* at 64-65. At the evidentiary hearing, Hade testified that this is a "standard form protocol" that was not drafted for this particular warrant. ECF No. 79-3 at 90.

Hade executed the warrant on February 25, 2016, and in the course of doing so, "handed Angela Taylor, Defendant Taylor's spouse, a copy of the search warrant." ECF No. 56-3 at 9; ECF No. 63-1 ¶ 6. "Prior to execution of the search warrant . . . , members of the search warrant team, which included IRS-CI [Internal Revenue Service Criminal Investigation] agents and two agents of the Federal Bureau of Investigation, were provided copies of the unsigned search warrant affidavit later submitted to [the magistrate judge]," as well as Attachment B. ECF No. 63-1 ¶ 5. In Hade's experience, "it is the practice of IRS-CI agents executing search warrants in this District to review the search warrant affidavit and Attachment B (Items to be Seized) prior to participating in a search warrant." *Id.* At the evidentiary hearing, Scott Friesen, an IRS computer investigative specialist on whom Hade relied "to image and search any data-storing devices which could have contained digital evidence," confirmed that it is his practice to read the affidavit and its attachments before or during a search. *Id.* ¶ 8; ECF No. 79-3 at 13. He did not recall either way whether he received a copy of the affidavit in this case, but the record demonstrates that, prior to the search, Friesen received copies of the affidavit, Attachment A, the first version of Attachment B, and Attachment C. *Id.* at 20; ECF Nos. 79-4 & 79-5.

During the search, the government seized tangible documents, including financial and tax records, as well as eighteen electronic devices. ECF No. 56-3 at 10-15. Taylor contends that the seized devices include "the Apple iPhone on Mrs. Taylor's person and numerous hard drives related to Mr. Taylor's work as a music producer." ECF No. 56-1 ¶ 11. Forensic examinations of the devices occurred off-site at a later date, and over 35,000 pages of images were taken from the devices and produced to all three defendants in discovery. *Id.* ¶ 12; ECF No. 63-1 ¶ 8. Hade "specifically recall[s] documents that did not fall under the scope of the warrant. These documents were not seized, but left at their original locations within Taylor's residence and storage unit." ECF No. 63-1 ¶ 6. Similarly, Friesen testified that he did not seize all electronic devices encountered during the search, and he did not copy any files from devices that did not contain any items responsive to Attachment B. ECF No. 79-3 at 28-29, 46.

4

1 Hade acknowledges that the government committed several violations of the ESI protocol. For example, "six emails and one attached document" from one of the items seized "were erroneously retained as evidence that exceeded the date restrictions of the warrant." ECF No. 63-1 ¶ 10. Additionally, "[a] complete forensic image of one iPhone was . . . mistakenly kept in its entirety and treated as seized evidence . . . [and] produced with discovery in this case." ECF No. 63-1 ¶ 11. "Analytic reports . . . for the two iPhones and one iPad . . . were [also] produced with discovery in this case . . . [and] were not destroyed as they should have been pursuant to the Search Warrant protocol." *Id.* ¶ 12. Moreover, "[a]fter imaging, . . . thirteen devices were determined . . . to not contain any evidence based on the scope of the Search Warrant," but the forensic images of these devices "were set aside," rather than being "destroyed . . . as they should have been pursuant to the Search Warrant protocol." *Id.* ¶ 13. Similarly, the government notes in its opposition that "[u]pon reviewing Defendant Taylor's motion, the government identified five emails dated prior to the date restriction in the Search Warrant. The government will not use, and will delete, these documents as outside the scope of the search warrant." ECF No. 63 at 9 n.3; *see also id.* at 12 n.2 ("The government will not seek to introduce evidence not searched within the period provided in the ESI protocol.").

The Court held an evidentiary hearing on November 9, 2018. ECF No. 75. It ordered the parties to present evidence on two issues: whether Hade's search warrant affidavit and its attachments were attached to or accompanied the warrant at the time of execution, and "[w]hether the procedure used to search electronic devices was reasonable." ECF No. 67 at 1. The government presented Hade and Friesen as witnesses. Taylor called no witnesses.

## II.   LEGAL STANDARD

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. When presented with an affidavit or other information in support of a search warrant, a magistrate judge "must issue the warrant if there is a probable cause to search for and seize a person or property." Fed. R. Crim. P. 41(d).

5

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (internal quotation marks and citation omitted). A reviewing court should give deference to a magistrate's finding of probable cause and uphold it "if there is a substantial basis for concluding that the affidavit in support of the warrant established probable cause." *United States v. Greany*, 929 F.2d 523, 524 (9th Cir. 1991). "To meet this test, the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued." *Id.* at 524-25.

"[F]or a search to be reasonable, the warrant must be specific. Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991) (citations omitted). The particularity requirement is designed to overcome "the specific evil [of] the 'general warrant'" by avoiding "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

> By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Particularity "prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is [to be] left to the discretion of the officer executing the warrant." *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)).

6

"The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved. Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). When determining whether a warrant is sufficiently specific, a reviewing court should consider:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Id.* at 963-64 (citations omitted). "The standard of review for the specificity of a warrant is de novo." *United States v. Wong*, 334 F.3d 831, 836 (9th Cir. 2003).

## III. DISCUSSION

### A. Incorporation of the Affidavit into the Warrant

Before considering whether the search warrant in this case complied with the Fourth Amendment, the Court must first determine "the threshold question of whether the warrant incorporated [Hade's] affidavit." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009). "If [the affidavit] was incorporated, then we evaluate the affidavit and the warrant as a whole, allowing the affidavit to cure any deficiencies in the naked warrant." *Id.* (internal quotation marks and citation omitted). An affidavit is incorporated "only if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search."[4] *Id.* at 699 (quoting *United States v. Kow*, 58 F.3d 423, 429 n.3 (9th Cir. 1995), and citing *United States v. Vesikuru*, 314 F.3d 1116, 1120 (9th Cir. 2002)).

As to the first prong, "[a] warrant expressly incorporates an affidavit when it uses suitable words of reference." *Id.* (internal quotation marks and citation omitted). The warrant in this case

---

[4] An affidavit may not "expand the scope of a legitimate warrant beyond its express limitations" – a contention not at issue in this case. *United States v. Sedaghaty*, 728 F.3d 885, 913 (9th Cir. 2013). But it can "cure a defective warrant. That circumstance has arisen when there is a clerical error or when the warrant is overbroad but could be cured by a particularized affidavit." *Id.*

7

does not state explicitly that the affidavit is incorporated, but it does include boilerplate language that the magistrate judge "find[s] that the affidavit(s), or any recorded testimony, establish probable cause" to search the Elverton residence. ECF No. 56-3 at 2. Although this is not "the most precise language of reference possible," it is sufficient to achieve the goal of incorporation by reference. *SDI Future Health*, 568 F.3d at 700. It is enough for a warrant to "point[] to the affidavit explicitly, noting 'the supporting affidavit(s)' as the 'grounds for application for issuance of the search warrant.'" *Id.* Likewise, it is sufficient for a warrant to include language that, "*[u]pon the sworn complaint made before me* there is probable cause to believe that the [specified] crime[] . . . has been committed." *Vesikuru*, 314 F.3d at 1120 (9th Cir. 2002) (emphasis in original). The warrant's language in this case is not materially distinguishable from that found acceptable by the Ninth Circuit in *SDI Future Health* and *Vesikuru*. It is therefore "suitable" to incorporate the affidavit by reference.[5]

As to the second prong, it is undisputed that the affidavit was not physically attached to the warrant, so the Court must consider whether the affidavit "accompanie[d] the warrant while agents execute[d] the search." *Kow*, 58 F.3d at 429 n.3. The Ninth Circuit has held that an affidavit accompanied the warrant where:

> [the executing agent] and the search team had copies of the affidavit in their possession when they executed the warrant. Although it is unclear whether each member of the team had his own copy as he conducted the search, the magistrate accepted [the agent's] representation that "the affidavit was available during the search for reference by any member of the Government's search team." By making the affidavit available, the search team ensured that it "accompanied the warrant" to satisfy the requirements of incorporation. Nothing more is necessary for the affidavit to ensure "that the discretion of the officers executing the warrant is limited."

*SDI Future Health*, 568 F.3d at 700-01 (quoting *United States v. Towne*, 997 F.2d 537, 548 (9th Cir. 1993) (internal quotation marks omitted)). The government is not required to demonstrate

---

[5] The Court inadvertently muddled the record when it stated at the evidentiary hearing that it did not believe there was any dispute that the warrant did not "explicitly" incorporate the affidavit. *See* ECF No. 79-3 at 87-88, 96. The warrant explicitly "incorporate[s] herein by reference" Attachments A and B and does not contain similar language regarding the affidavit. ECF No. 56-3 at 2. However, based on the authority cited above, the language in the warrant was nonetheless suitable to expressly incorporate the affidavit by reference.

8

that the executing agents actually relied on the affidavit during the search. *Id.* at 701 n.10. Here, Hade's declaration states that he provided members of the search team with "copies of the unsigned search warrant affidavit later submitted to [the magistrate]" two days prior to the search. ECF No. 63-1 ¶ 2; *see also* ECF No. 79-5 (email correspondence sending affidavit, without attachments, and tentative operations plan to search team). Because the affidavit was sealed at the time the warrant was executed, it was standard practice not to attach the affidavit to the warrant or to bring a physical copy of the affidavit to the search. ECF No. 79-3 at 70-71. However, Hade testified that he had access to the electronic version of the affidavit on his Blackberry mobile device at the time of the search. *Id.* at 71. Although Hade did not explicitly state that he was able to share such access with other members of the search team, that is the only reasonable inference. The Court therefore finds that the affidavit was available to members of the search team, and that the affidavit accompanied the warrant at the time of the search.

Since both prongs of incorporation have been satisfied, the Court will "evaluate the affidavit and the warrant as a whole." *SDI Future Health*, 568 F.3d at 699.

### B. Validity of the Warrant

Taylor contends that the warrant is invalid because it was based on stale information and was insufficiently specific. He also argues that suppression of evidence is warranted based on a deficient electronic search protocol. The Court considers each argument in turn.

#### 1. Staleness

First, Taylor argues that "[t]he information recited in the search warrant affidavit related to events that occurred as early as 2008 and no later than 2012, more than four years before the search was executed," and that it was therefore stale. ECF No. 56 at 9. However, "[i]nformation underlying a warrant is not stale if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013) (internal quotation marks and citation omitted). "The mere passage of substantial amounts of time is not controlling in a question of staleness. That is particularly true with electronic evidence." *United States v. Flores*, 802 F.3d 1028, 1043 (9th Cir. 2015) (internal quotation marks and citation omitted); *see also United States v. Gourde*,

440 F.3d 1065, 1071 (9th Cir. 2006) ("Thanks to the long memory of computers, any evidence of a crime was almost certainly still on [the defendant's] computer, even if he had tried to delete the [illegal] images."). As the Ninth Circuit has explained:

> One may properly infer that equipment acquired to accomplish the crime and records of the criminal activity will be kept for some period of time. When the evidence sought is of an ongoing criminal business of a necessarily long-term nature . . . rather than that of a completed act, greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time.

*Greany*, 929 F.2d at 525 (citations omitted). In this case, the affidavit explains that "[p]ersons engaged in financial crimes often maintain such records for long periods of time, particularly when they are involved in ongoing criminal conduct over an extensive period"; that "the long-term retention of records in electronic form, including in e-mail accounts, can be even more extended than the retention of paper records"; and that records are often kept within residences and not just at business addresses.[6] ECF No. 56-2 at 19-22. It also describes a multi-year course of allegedly illegal conduct, including acts taking place in 2014 and 2015. *E.g.*, *id.* at 44-48. And it states that, "[f]rom the earliest inceptions of Taylor's financial schemes to the present, the Target Premises has been listed at Taylor's place of business for his various entities." ECF No. 79-5 at 43. The affidavit was sufficient to establish probable cause that the evidence to be seized would be on the premises at the time the warrant was issued.

### 2. Specificity

Taylor also challenges the specificity of the warrant, arguing that it is both overbroad and lacking in particularity: "Taylor's argument is that the search warrant was overbroad because of its failure to demonstrate probable cause for the search and seizure of each of the broad categories of items sought, and for its lack of particularity in describing items that might be evidence of the

---

[6] Citing to *Gates*, 462 U.S. 213, Taylor contends that these are conclusory statements that cannot establish probable cause. ECF No. 65 at 6. The Court disagrees. In *Gates*, the Supreme Court found insufficient statements by "an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises" and "that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home." *Gates*, 462 U.S. at 239 (citations omitted). Here, by contrast, Hade's affidavit contains more than "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause." *Id.*

10

alleged crime." ECF No. 65 at 4. The Court disagrees.

The affidavit describes in some detail several allegedly fraudulent schemes in which Taylor is alleged to have participated, including the use of "attorneys, multiple business entities and bank accounts, both foreign and domestic, to conceal the illicit proceeds." ECF No. 56-2 at 32-56. The affidavit further describes the types of records that might be relevant to proving such crimes and explains that such records are often stored on computers or other electronic equipment, including cell phones; that they are often retained for long periods of time; and the importance of taking forensic images of computers and digital devices. *Id.* at 17-30. Although Taylor is correct that the affidavit does not list every potential type of document that might be evidence of the alleged crimes, he cites no authority, and the Court is aware of none, that this is required. The Court concludes that the scope of the warrant does not exceed "the probable cause on which the warrant is based." *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d at 857. The only specific category of documents objected to by Taylor is "[l]oan and line-of-credit records including applications, financial statements, loan collateral, credit and background investigations required." ECF No. 65 at 4 (also asserting that "[v]irtually every category of items to be seized listed in the warrant is similarly overbroad"). But the affidavit describes broad categories of financial records, including loan applications, that might be kept by persons engaged in financial crimes. ECF No. 56-2 at 19-20. *Kow*, in which the Ninth Circuit found a warrant to be overbroad and on which Taylor relies, is distinguishable. In that case, "[m]uch of the information in the affidavit relate[d] to . . . crimes [that had] no apparent connection to the business documents sought in the warrant," and there was no evidence that "the entire business [was] merely a scheme to defraud or that all of the business's records [were] likely to evidence criminal activity." 58 F.3d at 427. In this case, by contrast, the affidavit only discusses the crimes at issue, and the documents sought had an obvious connection to those crimes. Additionally, two of the companies discussed in the affidavit were described as "sham companies." ECF No. 56-2 at 35.

The Court also rejects Taylor's arguments that the warrant lacked sufficient particularity. A warrant may not "simply refer[] to the statute believed to have been violated" instead of "describing in greater detail the items one commonly expects to find on premises used for the

11

criminal activities in question, or, at the very least, by describing the criminal activities themselves." *Spilotro*, 800 F.2d at 964. Nor is it sufficient for a warrant to "authorize wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide no guidelines to distinguish items used lawfully from those the government had probable cause to seize." *Id.* But, in this case, "[b]ecause the search warrants, read in tandem with the accompanying affidavits, described specific crimes, the searches were not conducted pursuant to an impermissible general warrant." *United States v. Kahre*, 737 F.3d 554, 566 (9th Cir. 2013). Attachment B to the warrant constrains the search to a limited time period, lists five specific crimes, and describes categories of documents and electronic evidence to be seized, and the affidavit provides a detailed description of the alleged crimes. The case is therefore distinguishable from cases where the Ninth Circuit has found warrants to be invalid. For example, in *Kow*, the warrant "failed to give any indication of the alleged crime to which the seized documents pertained" and "did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place." 58 F.3d at 427. Likewise, in *Cardwell*, "[t]he only limitation on the search and seizure of appellants' business papers was the requirement that they be the instrumentality or evidence of violation of the general tax evasion statute, 26 U.S.C. § 7201." 680 F.2d at 77. As further evidence that the warrant was not limitless, and that the agents did not believe it to be so, the agents in this case did not seize all documents or electronic devices they encountered when executing the warrant. ECF No. 63-1 ¶ 6 ("I specifically recall documents that did not fall under the scope of the warrant. These documents were not seized, but left at their original locations within Taylor's residence and storage unit."); ECF No. 79-3 at 46 (recalling that "some CD's" and "possibly some gaming equipment" were not seized).

Taylor faults the affidavit for not "contain[ing] any facts relating to any specific computer or electronic device" other than a SWIFT machine. ECF No. 56 at 8. But he cites no authority, and the Court is aware of none, requiring a search warrant to list each specific computer or electronic device to be searched. This case is unlike *VonderAhe v. Howland*, 508 F.2d 364, 370 (9th Cir. 1974), in which, "[u]pon the information available to it, the government knew exactly what it needed and wanted and where the records were located." Here, by contrast, there is no

12

indication that "the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *Spilotro*, 800 F.2d at 963. As in *Schesso*, where the Ninth Circuit upheld the validity of a warrant to search "Schesso's residence for '[a]ny computer or electronic equipment or digital data storage devices that are capable of being used' for" dealing in or possessing child pornography, the government here "was faced with the challenge of searching for digital data that was not limited to a specific, known file or set of files. The government had no way of knowing which or how many illicit files there might be or where they might be stored, or of describing the items to be seized in a more precise manner." 730 F.3d at 1043, 1046. Under these circumstances, the failure of the warrant, including the affidavit, to be more specific as to the search of electronic devices is not constitutionally infirm.

Finally, Taylor contends that the agents' seizure of his wife's iPhone highlights how impermissibly broad the warrant reached. However, the affidavit states that Taylor and his wife filed joint tax returns, including business schedules related to Clearfog Investments LLC, which Taylor used to fund SBUSA, one of the alleged sham companies that was part of the allegedly fraudulent scheme. ECF No. 56-2 at 33, 36-40. Combined with the affidavit's descriptions of the types of records that would be relevant to the alleged crimes and how they might be stored, this is sufficient to establish probable cause to search Taylor's wife's cell phone.[7]

The Court does not find the warrant to be overbroad or lacking in particularity.

### 3. Electronic Search Protocol

Taylor next argues that the electronic search protocol used in this case "is deficient because it does not require the government to foreswear reliance on plain view and it makes no provision for a filter team." ECF No. 56 at 7. The Ninth Circuit initially imposed these and other search protocol conditions as requirements in its en banc decision in *United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989, 1006 (9th Cir. 2009) (en banc) ("*CDT II*"). However:

---

[7] Taylor's reliance on *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017), is not persuasive. In *Griffith*, the court found that a warrant "authoriz[ing] the wholesale seizure of all electronic devices discovered in the apartment [where the defendant resided], including items owned by third parties," was overbroad because it allowed seizure of "devices plainly unrelated to the crime." *Id.* at 1270-71, 1277. Taylor's wife's cell phone was not plainly unrelated to the alleged crimes.

13

> Approximately a year later, the en banc court issued a new, amended opinion. The search protocol was no longer part of the majority opinion, but instead was moved to a concurring opinion and thus was no longer binding circuit precedent. By its own terms, the concurring opinion proposes the protocols not as constitutional requirements but as "guidance," which, when followed, "offers the government a safe harbor." [*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1178 (9th Cir. 2010) (en banc) ("*CDT III*")] (Kozinski, C.J., concurring). Notably, there is no clear-cut rule: "District and magistrate judges must exercise their independent judgment in every case, but heeding this guidance will significantly increase the likelihood that the searches and seizures of electronic storage that they authorize will be deemed reasonable and lawful." *Id.*

*Schesso*, 730 F.3d at 1049. Thus, the absence of these two protocols does not automatically violate the Fourth Amendment. Instead, "the proper balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures of electronic data must be determined on a case-by-case basis." *Id.* at 1050. In making that determination, courts must "recognize the reality that over-seizing is an inherent part of the electronic search process and proceed on the assumption that, when it comes to the seizure of electronic records, this will be far more common than in the days of paper records." *CDT III*, 621 F.3d at 1177 (per curiam).

> There is no way to be sure exactly what an electronic file contains without somehow examining its contents – either by opening it and looking, using specialized forensic software, keyword searching or some other such technique. But electronic files are generally found on media that also contain thousands or millions of other files among which the sought-after data may be stored or concealed. By necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after data are concealed there.

*Id.* at 1176. Courts must be vigilant to ensure that "[t]he process of segregating electronic data that is seizable from that which is not [does] not become a vehicle for the government to gain access to data which it has no probable cause to collect." *Id.* at 1177.

As to plain view, inclusion of the recommended search protocol "would have made little difference" to Taylor, as the record in this case contains no suggestion that the government has relied on or will seek to rely on the plain view doctrine. *Schesso*, 730 F.3d at 1050. If the government attempts to introduce evidence that Taylor believes falls outside the scope of the warrant and can only be justified by the plain view doctrine, the Court can consider those

14

arguments in the context of a motion in limine. Suppression of all evidence obtained under the warrant is not required.

As to the absence of a filter team, the Ninth Circuit has explained that *CDT III* does not require such a team. In a case where "'any authorized federal agent' was allowed to search within [a defendant's social media account] for responsive data," the court explained:

> Ideally, the government's investigative team would not have been involved in segregating responsive data from the rest of [the defendant's] account. *CDT* did not prohibit investigative teams from participating in data segregation as a general matter, however, and instead faulted the government for misleadingly suggesting in the warrant that the team would not be involved. *CDT* thus serves as a reminder not to mislead magistrates or exceed the scope of a warrant, not as a blanket prohibition on data segregation by investigative teams.

*Flores*, 802 F.3d at 1045 n.22 (citing *CDT III*, 621 F.3d at 1168, 1172).[8] As in that case, there is similarly no evidence in this case that "the seized data was . . . used for any broader investigative purposes." *Id.* at 1045. The lack of an independent filter team did not render the warrant invalid.

Taylor correctly observes that the government failed to comply with all aspects of its own search protocol. For example, the government acknowledges that "six emails and one attached document were erroneously retained as evidence that exceeded the date restrictions of the warrant," and that "[a] complete forensic image of one iPhone was . . . mistakenly kept in its entirety and treated as seized evidence." ECF No. 63-1 ¶¶ 10-11. But the government "will not seek to introduce evidence not searched within the period provided in the ESI protocol," and there is thus nothing to suppress on these grounds.[9] ECF No. 63 at 12 n.2.

---

[8] Taylor cites *In the Matter of the United States of America's Application for a Search Warrant to Seize and Search Electronic Devices from Edward Cunnius*, in which a magistrate judge rejected an application for a search warrant because the government "refuse[d] to conduct its search of the digital devices utilizing a filter team and foreswearing reliance on the plain view doctrine." 770 F. Supp. 2d 1138, 1139 (W.D. Wash. 2011). The Court is not persuaded by this non-binding authority in light of the Ninth Circuit's reasoning in *CDT III* and *Flores* and the Court's consideration of the facts of this case. Moreover, the magistrate judge in *Cunnius* was persuaded in part by its conclusion that "if the Court sanctions this action, its decision effectively becomes non-reviewable." *Id.* at 1153 (citing *United States v. Leon*, 468 U.S. 897 (1984)). No such concerns are present here.

[9] "Although the items seized may not be within the terms of the warrant, the district court need not suppress all of the evidence seized unless there was a flagrant disregard for the terms of the warrant. Only those items which fall outside the scope of the warrant need be suppressed."

The government also appears to have violated the search protocol's provision that it may seize and retain a device only if it "determines that a mirror image of the contents of a device cannot be created on site in a reasonable time." ECF No. 56-2 at 64. At the evidentiary hearing, Friesen testified that he did not recall attempting to image any of the devices on-site, even though some of them could have been imaged in 15 to 20 minutes. ECF No. 79-3 at 47-49. However, the seized devices fell within the scope of the warrant, and they would have been imaged and searched regardless of whether this was done on- or off-site. The government's failure to image any devices on-site does not warrant suppression.[10] *United States v. Alvarez*, No. 14-cr-00120-EMC, 2016 WL 3220013, at *2-4 (N.D. Cal. June 10, 2016).

### C. Good Faith Exception

Finally, even if the warrant were invalid, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). Taylor does not allege that the magistrate judge abandoned her judicial role or that Hade or anyone else acted in bad faith in preparing the affidavit or application for a warrant; he argues that the good faith exception does not apply because the search warrant was so facially deficient that no officer could have objectively relied on it. That standard is satisfied only where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" – i.e., where there is no "evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Id.* at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-611 (1975) (Powell, J., concurring in part)); *id.* at 926. For the reasons discussed above, the Court concludes that the affidavit in this case was sufficient to

---

*United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985). The Court does not find a "flagrant disregard for the terms of the warrant" in this case.

[10] Taylor appears to concede as much in his reply: "The government concedes that it failed to follow its own electronic search protocol. While that failure *may not, in and of itself, be grounds to suppress*, it is further evidence of the government's cavalier disregard of its obligation to protect the rights of its citizens and to abide by the dictates of the Fourth Amendment." ECF No. 65 at 5 (emphasis added).

16

support a finding of probable cause, and the Court therefore cannot find that an official's reliance on the warrant was objectively unreasonable. Likewise, "law enforcement officers cannot be faulted for relying on a warrant that did not contain the non-binding [electronic search] protocols." *Schesso*, 730 F.3d at 1051 (applying good faith exception in the alternative).

## CONCLUSION

Taylor's motion to suppress is denied.

**IT IS SO ORDERED.**

Dated: January 22, 2019



JON S. TIGAR
United States District Judge